FILED
2013 Feb-26  AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **DENNIS EARL FARRINGTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:11-CV-3117-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Dennis Earl Farrington brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of the Social Security Administration denying his applications for Disability Insurance Benefits and Supplemental Security Income.  Based upon this court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

On March 11, 2008, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  (Tr. 28, 29, 90, 99, 102).  Plaintiff claims a disability onset date of November 27, 2007 due to diabetes, rheumatoid arthritis, gout, high blood pressure, glaucoma, back problems, and knee problems.  (Tr. 120).  Plaintiff's application was initially denied by the Social Security Administration on May 30, 2008.  (Tr. 46).  Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Cynthia W. Brown on

January 14, 2010. (Tr. 8-27, 51, 52). In her February 18, 2010 decision, the ALJ determined that Plaintiff was not disabled within the meaning of the Act and thus not eligible for DIB or SSI benefits. (Tr. 40). After the Appeals Council denied Plaintiff's request for review on June 23, 2011, the ALJ's decision became the final decision of the Commissioner. (Tr. 1). Therefore, the ALJ's decision is a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff was 42-years old at the time of the hearing and had completed his high school education. (Tr. 12-13, 125). Plaintiff last worked as a groundsman installing wires and setting up transformers for a utility line company. (Tr. 24, 144). Prior to that, Plaintiff engaged in medium to heavy, semi-skilled work as a machine operator, as well as medium, semi-skilled work as a wire drawing machine operator, and as a skidder operator. (Tr. 144-47).

At the hearing, Plaintiff gave testimony regarding the specifics of his condition. Concerning his visual impairments, Plaintiff testified that he is blind in his left eye with the exception of slight peripheral vision. (Tr. 13-14). He noted that he experiences no problems in his right eye and that he is able to drive a car. (Tr. 15, 21). Regarding his diabetes, Plaintiff was asked if he had experienced any problems since being hospitalized due to that condition. Plaintiff answered that he had no problems except some tingling and numbness in his fingers and feet. (Tr. 16). When asked about his back pain, Plaintiff testified that it might be the result of his use of crutches. (Tr. 17).

Plaintiff's principle complaint at the hearing involved his knees and ankles. (Tr. 13, 18). Specifically, Plaintiff claimed he was having "a lot of trouble" due to a fluid buildup in his left knee, but that his right knee was causing greater pain. (Tr. 17).

2

Although Plaintiff testified that he uses a cane to take weight off his knees, he clarified that the use of a cane was neither prescribed nor recommended by a doctor.  (Tr. 16). Plaintiff also testified that his ankles hurt all the time.  (Tr. 18).  In general, Plaintiff endorsed an average pain level of six to seven (6-7) out of ten (10). He further claimed that the pain was worse on some days, and that on those days he could hardly get out of bed.  (*Id.*).

Plaintiff testified that, due to his condition, he generally can only sit or stand in one place for around thirty minutes and that he can only walk about two blocks without having to sit and rest.  (Tr. 18-19).  Plaintiff also testified he has considerable trouble sleeping because of frequent trips to the bathroom.  (*Id.*).  Plaintiff stated that he watches television all day, spending two to three hours lying down, and sits for the rest of the day. (Tr. 20).

In support of his claim, Plaintiff presented medical records beginning with a 2002 entry from ophthalmologist, Dr. Michael Anderson, in which Plaintiff was diagnosed with glaucoma.  (Tr. 229).  Plaintiff's next record is from a visit to American Family Care clinic on September 26, 2007.  (Tr. 206-10). While the notes from this visit are largely illegible, the court is able to discern that Plaintiff complained of dizziness and constant headaches for three consecutive days.  (Tr. 209).

On September 29, 2007, Plaintiff reported to the Shelby Baptist Medical Center Emergency Room complaining of right side flank pain.  (Tr. 170, 179-81).  Plaintiff's treating physicians believed his pain was caused by a recent passage of a ureter stone. (Tr. 179-80).  On October 19, 2007, Plaintiff again reported to American Family Care complaining of fatigue, blurry vision, and three weeks of vertigo.  (Tr. 205).   Later

3

medical records indicate Plaintiff was diagnosed with diabetes by physicians at American Family Care, presumably on this visit.  (Tr. 185).

On October 21, 2007, Plaintiff was admitted to the Shelby Baptist Medical Central Hospital after reporting to the emergency room with complaints of nausea, vomiting, and abdominal cramping.  (Tr. 185).  Plaintiff was diagnosed with diabetic ketoacidois.  (*Id*.).  According to hospital records, Plaintiff had not been checking his blood sugar at home.  (*Id*).  Plaintiff was treated with aggressive hydration therapy, and records indicate his renal functioning returned to normal limits fairly soon after his admission.  (*Id*.).  Plaintiff was discharged from the hospital on October 26, 2007 in stable condition with elevated but improving blood sugar levels.  (*Id*.).  He was instructed on properly taking insulin and told to obtain a primary care physician within one week. (Tr. 185-86).

On November 14, 2007, Plaintiff reported to American Family Care regarding a fluid build up in his left knee.  (Tr. 204).  Plaintiff was seen by doctors at American Family Care regarding this condition repeatedly on November 17, 27, and 28.  (Tr. 200-03).  While the records from these visits are again substantially illegible, American Family Care ultimately referred Plaintiff to an orthopedic specialist, Dr. John P.K. Featheringill.  (Tr. 213).  Dr. Featheringill's notes indicate that Plaintiff's knee was drained on two occasions at American Family Care and that he complained of pain at the appointment. (*Id.*).  Dr. Featheringill suspected Plaintiff was suffering from a gout attack. (*Id*.).

A Social Security Disability Evaluation of Plaintiff was conducted by Dr. Bhuwan Sharma on May 20, 2008.  (Tr. 215).  Dr. Sharma noted that Plaintiff endorsed a

4

pain level of seven (7) out of ten (10), generally, and a knee pain level of ten (10) out of ten (10) when walking.  (*Id.*).  Plaintiff complained of similar pain in both knees, but he indicated that the more severe pain was in his right knee.  (*Id.*).  Plaintiff also endorsed a pain level of six (6) out of ten (10) in his lower back.  (*Id.*)  He further complained of on-and-off blurred vision due to his diabetes, as well as ankle and foot pain.  (Tr. 215-216).  Dr. Sharma diagnosed Plaintiff with bilateral knee arthritis accompanied by knee pain, lower back pain, left eye visual impairment, uncontrolled diabetes, gouty arthritis, and peripheral neuritis secondary to diabetes.  (Tr. 218).  He concluded Plaintiff would "have some difficulty working in a place where he has to bend down, squat frequently or . . . walk more than one half hour."  (*Id.*).

A Residual Functional Capacity Assessment ("RFC") of Plaintiff was conducted on May 30, 2008, by Dr. Robert H. Heilpern.  (Tr. 221-28).  Regarding exertional limitations, Dr. Heilpern concluded that Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk with normal breaks for about six (6) hours in an eight (8) hour workday, sit with normal breaks for about six (6) hours in an eight (8) hour workday, and that Plaintiff required no limitations on pushing and/or pulling.  (Tr. 222).  Regarding postural limitations, Dr. Heilpern concluded that Plaintiff could perform acts requiring occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but no activities requiring ladders, ropes, or scaffolds.  (Tr. 223).  Dr. Heilpern concluded that Plaintiff established no manipulative, visual, or communicative limitations, and that Plaintiff's only environmental limitations were to avoid unprotected heights and hazardous machinery.  (Tr. 224-25).  Dr. Heilpern indicated that he gave some weight to Dr. Sharma's report.  (Tr. 227).  He further

indicated that he found Plaintiff's subjective claims regarding his condition to be partially credible.  (Tr. 226).

Plaintiff was seen again by American Family Care on March 24, 2009.  (Tr. 196). Again, and unfortunately, notes from this visit are substantially illegible. Plaintiff was referred by American Family Care to a urologist, Dr. Scott Kelly.  (Tr. 160).  Dr. Kelly noted that Plaintiff had an elevated PSA level.  (Tr. 163).

When asked why his medical records contained large gaps without medical visits, Plaintiff testified that he was under the impression he was uninsured after losing his job in 2007, but learned in 2008 that he was covered by his estranged wife's policy.  (Tr. 22). When the ALJ inquired why Plaintiff's records were still limited after he discovered that he was covered by his wife's policy, Plaintiff answered that he does not like to visit doctors unless his pain is unbearable.  (Tr. 22-23).

## II.    The ALJ's Decision

Claimants under DIB and SSI must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "Substantial gainful activity" is work that involves

6

significant physical or mental activities done for pay or profit.  20 C.F.R. § 404.1572.  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe."  20 C.F.R. §§ 404.1520(c), 416.920(c).   Absent such impairment, the claimant may not claim disability.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which

7

refers to the claimant's capacity to work despite his impairments. 20 C.F.R. § 404.1520(e); *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. 404.1520(f).  If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof, which rests on the claimant through step four, shifts to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(g), 404.1560(c); *Phillips*, 357 F.3d at 1241 n.10.  The ALJ can either use the Medical Vocational Guidelines ("the Grids") or hear testimony from a vocational expert ("VE") in making this determination. *Id.* at 1239-40.

Regarding steps one through three, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since November 27, 2007 and met the insured status requirements of the Act through December 31, 2012; (2) has the following severe impairments: diabetes mellitus, osteoarthritis bilaterally of the knees, gouty arthritis, and a left eye visual impairment; but (3) does not have impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 35-36).

8

Before proceeding to steps four and five, the ALJ reached an RFC determination, finding that "[Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a) except he can occasionally balance, stoop, kneel, crouch, or crawl; he should avoid unprotected hazards; and he has no binocular vision." (Tr. 36). In making this determination, the ALJ indicated that he gave great weight to the assessment by Dr. Sharma, the examining physician. (Tr. 38). The ALJ noted that while she considered the findings of Dr. Heilpern, she gave those findings less weight because Dr. Heilpern did not have the benefit of additional evidence submitted after the RFC assessment, nor the benefit of hearing Plaintiff's testimony. (*Id.*). Regarding Plaintiff's claims about his vision, the ALJ considered Plaintiff's testimony that he was capable of driving as evidence that his vision was adequate. (*Id.*). The ALJ noted that while Plaintiff alleged disabling pain, he rarely sought treatment even after discovering he was insured through his estranged wife's policy. (*Id.*). The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, she further concluded that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's stated RFC assessment. (*Id.*).

After determining Plaintiff's RFC, the ALJ proceeded to step four of the disability determination and concluded that Plaintiff was unable to return to his past relevant work. (Tr. 38). In the final step of the analysis, step five, the ALJ determined that—given Plaintiff's age, education, work experience, and RFC—there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr.

9

39).  The ALJ's determination was based upon the testimony of the VE.  (*Id.*).  Thus, the ALJ ruled Plaintiff was not disabled as defined by the Act and not entitled to DIB or SSI benefits.  (Tr. 29-30).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff submits that "the ALJ failed to apply the Eleventh Circuit pain standard to the facts of [his] claim."  (Pl.'s Mem. at 4).  The facts of this claim, Plaintiff states, are that (1) he "testified to peripheral neuritis secondary to diabetes," (2) "also suffers from left knee effusion with gout," and (3) there were "also allegations of vertigo which were not considered by the ALJ as a severe impairment."  (*Id.*).

### IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin*

*v. Sullivan*, 894 F.2d at 1529.   If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529.  Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V.      Discussion

Plaintiff argues that the ALJ failed to properly apply the Eleventh Circuit pain standard because he failed to address (1) Plaintiff's testimony regarding peripheral neuritis secondary to diabetes, (2) Plaintiff's allegations of vertigo, and (3) Plaintiff's allegations of pain resulting from and effusion of his left knee.  (Pl.'s Mem. at 4).  For the following reasons, the court finds that none of these arguments have merit.

### A.      Peripheral Neuritis Secondary to Diabetes

Plaintiff does not cite any part of the record where he testified to peripheral neuritis secondary to diabetes, but the court has scoured the record and found one section of Plaintiff's direct examination by his attorney that is relevant:

| | |
|---|---|
| Attorney: | Okay. Any problems – I see here you've been diagnosed with diabetes and you had an acidosis where I guess the blood sugar drops really low. |
| Plaintiff: | Yes. |
| Attorney: | Any problems with the diabetes since them? Any type of problems related to it? |
| Plaintiff: | No, not really. I mean I have a lot of tingling and stuff in my fingers. |
| Attorney: | Where do you have – okay. In your fingers? Go ahead. |

| Plaintiff: | Fingers and feet, that numbness or whatever you would say. But I kind of – I kind of keep a watch on it. Try to. |
|---|---|

(Tr. 16).  The hole in Plaintiff's argument that his testimony regarding the tingling in his fingers and feet amounts to an allegation of disabling pain is this – Plaintiff did not testify at the hearing that this symptom caused disabling pain.  Plaintiff testified that he was "not really" experiencing any problems with his diabetes and that he "keep[s] a watch on it."  Plaintiff has offered no explanation as to how this testimony ought be construed as an allegation of disabling pain.  In the absence of any testimony or evidence that Plaintiff actually is experiencing disabling pain, this argument must fail.  An ALJ cannot be expected to evaluate testimony that was never given.

### B.    Vertigo

Similarly, Plaintiff's argument that the ALJ failed to consider his allegations of vertigo misses the mark.  It is true that the ALJ did not find Plaintiff's vertigo to constitute a severe impairment (Tr. 35), but Plaintiff never alleged that it is a severe impairment.  In fact, Plaintiff never alleged that he suffers from vertigo.  (*See* Tr. 10-27).[1] It is emphatically the duty of the claimant to prove that he is disabled.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").  If a claimant has reason to believe he qualifies for Social Security Disability Benefits, he must articulate those reasons to the ALJ at the

---

[1] Nonetheless, the ALJ did take Plaintiff's vertigo into account based on Plaintiff's medical records when she made her RFC determination.  (Tr. 37).

hearing, not on appeal.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1077 (11th Cir.1986) (issues not raised during administrative proceedings shall not be considered for the first time on appeal).  Plaintiff did not allege that his vertigo constituted a severe impairment or caused disabling pain; he did not even mention having vertigo at all either at the hearing (Tr. 10-27) or in his Disability Determination Service Questionnaire (Tr. 137-42).  Therefore, the court cannot consider this argument.

### C.      Left Knee Pain

Finally, Plaintiff argues that the ALJ failed to properly apply the Eleventh Circuit pain standard when evaluating his subjective complaints of chronic pain and swelling in his knee.  (Pl.'s Mem. at 6).  Such pain, Plaintiff suggests, severely curtails his daily activities to the point where he "need[s] to lie down for two or three hours on an average day."  (*Id.*) (citing Tr. 20).

Unfortunately for Plaintiff, the record suggests otherwise:

| | |
|---|---|
| Attorney: | How about bending? Not to pick something up, just the act of bending over, does that give you any problems? |
| Plaintiff: | Yeah, my – I mean I'm – I have the pain, like I say, in my back. But, I mean, I can bend over though. |
| Attorney: | Sleeping at night? |
| Plaintiff: | Probably about the first three hours, then after that I'm up almost every hour on the hour using the bathroom. |
| Attorney: | And then why is that? |
| Plaintiff: | Using the bathroom. |
| Attorney: | Do you ever have to lie down during the day? |
| Plaintiff: | Yeah. That's mostly what I do. I just kind of |

13

|           |                                                                            |
|-----------|----------------------------------------------------------------------------|
|           | lie down, sit around just watching TV. That's mostly what I do.            |
| Attorney: | How much time do you think you're spending lying down as opposed to sitting down? |
| Plaintiff: | Actual time?                                                              |
| Attorney: | Roughly.                                                                   |
| Plaintiff: | Probably two or three hours a day. I mean I'm just in front of the TV mostly all day. |

(Tr. 20). Contrary to Plaintiff's representations before this court (Pl.'s Mem. at 6), Plaintiff did not tell the ALJ that debilitating knee pain forced him to lie down for two or three hours on an average day. The section of the transcript Plaintiff cites in support of this allegation actually shows that Plaintiff reported pain in his *back*, which he indicated was not disabling pain. (Tr. 20). More importantly, Plaintiff did not allege at the hearing that he *needed* to lie down for two or three hours on an average day, but that he would typically lie down or sit around for two to three hours a day to watch television. (*Id.*). Because this particular argument – that the alleged pain in Plaintiff's knees compelled him to lie down for two to three hours a day – was not presented before the ALJ, it would be inappropriate for the court to consider this matter here. *See Wheeler*, 784 F.2d at 1077.

Putting aside this creative reinterpretation of the record, Plaintiff did in fact allege disabling knee pain at the hearing.[2] (Tr. 16-18). The question before this court is therefore whether the ALJ properly applied the Eleventh Circuit pain standard in evaluating Plaintiff's allegations of pain.

---

[2] Plaintiff neglected to cite any testimony in the record concerning knee pain, but the court has carefully scrutinized the entire record to ensure that nothing has fallen through the cracks.

14

The Eleventh Circuit has long established that a claimant seeking to show disabling pain must present (1) evidence of an underlying medical condition and (2) either objective medical evidence that confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ finds that a claimant has met this threshold requirement, the ALJ may still discredit a claimant's subjective allegations of disabling pain, but the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen*, 858. F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, the ALJ found that Plaintiff does have medically determinable impairments that could reasonably be expected to cause the alleged symptoms, thus satisfying the threshold requirement. (Tr. 38). The ALJ, however, discredited Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. (*Id.*). The primary reason the ALJ articulated for discrediting Plaintiff's pain testimony is that Plaintiff "has rarely sought medical treatment." (*Id.*). Plaintiff stated at the hearing that the reason he did not seek medical attention is because he thought he was uninsured. (Tr. 22). The transcript of the hearing sheds further light on this issue:

15

| | |
|---|---|
| ALJ: | Mr. Farrington, I didn't understand what you were saying about insurance. You said that you weren't covered in 2008, but then you were covered under your wife's insurance? |
| Plaintiff: | See, we're separated. I've been separated for around six years now. I thought that after, you know, after we separated I thought she took me off her insurance. She had me on her insurance, because I just had insurance through my job. So after we played out, you know the insurance played out. And at the time, I didn't know that, you know. She's the – she works through like the state billing, kind of like the board. So she actually kind of took me off her insurance unless we get the divorce. I didn't know it at the time that I was still covered. |
| ALJ: | So when did you find out that you are covered? |
| Plaintiff: | Like probably the last of 2008, somewhere in there. My daughter, she let me know. |
| ALJ: | So are you still covered? |
| Plaintiff: | Yes, I am covered now. We haven't gotten a divorce. |
| ALJ: | So once you found out in 2008 that you were still covered, why didn't you go to the doctor? |
| Plaintiff: | Well, at the time I really just – I wasn't – I was about like I am now. So, I mean, I don't like to go to the doctor. I don't like needles. But I have to do it. So, I just kind of – I just tough it out. I don't go to the doctor unless in a – actually I have to, unless the pain get to where I can't bear it. |

(Tr. 22-23). Given his statement that he only sees the doctor when the pain is actually

unbearable, and the fact that there are conflicts in Plaintiff's testimony regarding his

marital status and his insurance status, it was for the ALJ to judge the credibility of

Plaintiff's testimony, and it is emphatically not for this court to make (or second guess)

such credibility findings. *Wilson v. Barnhart*, 284 F.3d at 1221. The ALJ has made her

16

credibility determinations to support her findings, and those findings are supported by substantial evidence. They are, therefore, due to be affirmed. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d at 1159 (11th Cir. 2004).

## VI.     Conclusion

The court concludes that the ALJ correctly followed the Eleventh Circuit pain standard and her reason for discrediting Plaintiff's subjective pain testimony is supported by substantial evidence. Therefore, the Commissioner's decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____26th_____ day of February, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE